FILED

o

U.S. District Court

Middle District of Florida

Tampa Division

01 AUG 21 PM 2: 12

JOHN MULLER
    Plaintiff

V

City of Tampa, Florida

Tampa Police Department

Guyror Reyes

Tampa Police Dep't Corporal Packer

Tampa Police Dep't Sgt. Pomponio

Tampa Police Dep't Lt. R.J. Guidara

8:01CV1538-T-27
TGW

COMPLAINT

    Comes now the plaintiff and files this complaint for equitable and other relief as herein provided:

1) This complaint presents an action to recover damages in excess of $15,000.

2) At all times relevant to this action, the defendants are subject to the jurisdiction of this court. The City of Tampa is a State of Florida public agency, as is the Tampa Police Department.

3) Wherefore, Plaintiff demands judgment and relief or the Court:
    1) Damages in excess of $15,000
    2) Costs and attorney's fees as provided by law
    3) Such other further relief as this court shall determine to be just and proper in these circumstances.

4) Officers Pomponio and Packer threatened to arrest Plaintiff for misuse of the 911 emergency system. They detained Plaintiff in the police station. After approximately one hour of discussion and insults from the officers, Plaintiff was let go. Plaintiff went to Internal Affairs and filed a complaint. See attached sheets. Apparently no punishment was given to either officer.

5) Plaintiff was threatened with being "Baker Acted" by Mr. Packer. Upon his release from the police station, Plaintiff felt unsafe in his apartment, and left Tampa. He mailed a letter to Chief Holder, which is enclosed. Mr. Holder never responded. (Recent newspaper articles state that it is not his policy to answer any letters. Why this is, I have no idea. ) Plaintiff wrote several letters to Sgt. Pomponio and Corporal

Packer, Officer McGowan, Lt. Guidara, and Maj. Davis; not one letter was received from any of the above. Plaintiff feels he has no option to get explanations for Packer and Pomponio's actions other than to sue.

*John G. Muller*

October 16, 2000

Mr. McGowan:

I was surprised to read your report about your response to the illegally parked cars. I called in this problem. Why does your report refer to Guyror Reyes as the complainant? Why does your report say that I claimed to be a police officer? You should tell the truth, and say that a woman at the scene ALLEGED THAT I claimed to be a cop. Your report accuses me of a felony, and you'll hear from my lawyer.

Your supervisors said you would refuse to come in for a face to face meeting with me. You heard that woman say she "should have hit me." This comment should have been in your report; it is something you yourself witnessed. You did not hear me claim to be a cop; I did not do so. You did not hear them threaten me, which they did. The only important thing you DID hear is that she told you she "should have hit me." Now, just because you think I don,t have any civil case against them doesn,t mean I don,t have a case. I take legal advice from lawyers, not police officers. I hope you will remember her comment if this ever goes to trial a year or more down the road.

Why did you say you would not make any report? That is what I asked you to do, and you said you wouldn,t do it. Then I get a copy of this complaint, where you accuse me of a serious felony, impersonating a policeman.

I strongly suggest you amend this report and tell the truth - that this woman ALLEGED I said I am a cop. Also the report should list me as the complainant; I called at 12:01 pm, and again at 12:23 pm. I'm getting copies of both calls I made.

Don't feel bad. Even your supervisor just learned Monday that a citizen can get a copy of an officer,s response report. He has been on the force 24 years, and just now found out this.

We need to try for a little more professionalism, don"t you think?


Sincerely,


John Muller

John Muller
General Delivery
Chiefland, FL

Maj. Davis
TPD
9330 N. 30th St.
Tampa, FL 33612

10/20/2000

Maj. Davis:

Yesterday I spoke with Sgt. Stertzer of Internal Affairs about an experience I had on Monday with Mr. Pomponio and Mr. Packer. I was locked in your back room for over an hour. Mr. Pomponio said he was going to arrest me; I wanted to lock up my bike, but he said he was going to impound it. Does this occur often, people being locked up for long periods, then being released, without an arrest ever being effected?

What really has me upset is Mr. Packer's threat to Baker Act me. What was his reason? They felt I abused the 911 system by calling for an officer when I was threatened by 3 people at Reyes Automotive. Well, I was always told that dispatchers are trained to prioritize calls; if someone is dying, of course that call is more important than a threat, and would be dispatched first. Yesterday on the interstate, I saw a woman broken down. I called 911 from my cell phone; the woman patched me through to Pasco County sheriff's office, who thanked me for caring enough to call, and a deputy would be sent to help her. I told her if this happened in Tampa, they would want to arrest me. Like I tried to tell Pompomio and Packer, it is not as black and white as they think; they say 911 is reserved for calls that require siren, emer. lights, and officers running red lights. I think dispatchers knew that the woman with the broken down car needed one level of response, while a burning house needs another response.

How can a supervisor like Mr. Packer really think it appropriate to Baker Act someone for this action? I have been staying in motels on the road, worring that these men may come to my home, or jobs, or my flight school, to have me committed. Mr. Stertzer says a hospital would not accept someone on such a flimsey reason; what is to stop Packer from making up something?

For some crazy reason, Pomponio was mad when I mentioned I go to flight school. He demanded to see my 3rd Class medical card. I tried to tell him you don't need that unless you have soloed, which I have not done yet. He then called both schools I fly out of, demanding to know if I really am a student, and how many hours I have in the plane. What in God's name did this have to do with his contention that I abused 911? I am embarrassed to go to school, now that the teachers think I am a criminal. I want someone to send me an official explanation for Pompanio's actions, so I can give it to the director of the schools.

Please try to get across to Pompanio that a pre-solo student pilot does not need a medical card; the instructor is PIC (pilot in command) and HE or SHE needs to have a med. certificate. Again, why this personal business of mine is any of their business is beyond me.

Please mail me a written guarantee from the Chief, or someone in authority, that the TPD is not seeking to Baker Act me, so I can go home, go back to work, and back to school.

I can be reached at:

>   General Delivery
>   Chiefland, FL

Sincerely,

J. Muller

November 1, 2000

TO:        C.E. DAVIS, Major    CEO. 11/2/00
            District II

ATTN:     R.A. RESSLER, Captain
            District II

FROM:     R.J. GUIDARA, Lieutenant
            District II

SUBJ:      Service Related Inquiry # 2000-445

Sir:

I have thoroughly reviewed the case pertaining to the allegations that Sergeant P. Pomponio and Corporal B. Packer acted inappropriately when they threatened Mr. Muller with arrest for accessing the 911 Emergency Reporting System. Mr. Muller also contends, in one of several letters that he authored and mailed directly to the District Office that Officer McGowan falsified a report regarding this incident.

The review considered the written responses of the three officers named in this complaint.

The facts of this case are brief. On October 16, 2000, Mr. Muller summoned police to 3121 E. Hillsborough Ave. reference a dispute where he claimed to have had been threatened by three Hispanic males. Officer McGowan handled the call for service. He learned that Mr. Muller was upset with employees at a local pawnshop for having parked their vehicles in such a manner as to block the sidewalk. Mr. Muller had approached the business employees in reference to his observation and subsequent dialogue between the parties became adversarial. At the time of the police response, there were no cars parked in violation of the law nor was there an emergency. Officer McGowan mediated the dispute and then returned to service. There was no need for a police report and consequently none was written. Prior to returning to service, Officer McGowan attempted to educate Mr. Muller concerning the proper manner in which to request non-emergency police service. Mr. Muller resisted Officer McGowan's efforts and suggested that he would use the system as he deemed necessary.

Following the incident, Mr. Muller traveled to the District II office where he met with Sergeant Pomponio reference the incident. Mr. Muller was disappointed with the result of the police intervention and angry at Officer McGowan's position that the improper usage of the 911 Emergency Reporting System could result in arrest as allowed by Florida Statute. Sergeant Pomponio and Corporal Packer assisted Mr. Muller with his complaint by researching the circumstances surrounding the call for service. It became obvious to both supervisors that Mr. Muller exhibited unorthodox and adversarial behavior. He also resisted their efforts to educate him on the proper and lawful use of the 911 Emergency Reporting System. Ultimately, he left the District pleased with the service that he had been provided.

It is my opinion based on the written accounts of all parties involved that Mr. Muller has a problem with Florida Statute 365.171 which defines and regulates the 911 Emergency Reporting System. It appears as though his interpretation of the statute does not coincide with the spirit of the statute. The officers in this case attempted unsuccessfully to educate Mr. Muller on the proper utilization of the emergency system.

Considering Mr. Muller's behavior; I would proffer that Mr. Muller's mental state is suspect. This is easily supported by the fact that Mr. Muller repeatedly makes reference to a police report authored by Officer McGowan when in actuality there was no report written.

Premised on the information available and in the absence of any other objective and/or independent evidence, it is my opinion that the actions of the officers in this case were both reasonable and within policy.

Respectfully Submitted,

R.J. GODARA, Lieutenant
District

November 11, 2000

Sgt. Pomponio:

Please note the highlighted part of the enclosed note. USF tells its students to call 911 if they see suspicious people. You say 911 only should be called for situations calling for officers to run red lights in responding. I think your opinion may not be correct. To threaten me with arrest for misusing 911, and hold me for an hour, seems to not be proper. How can 2 departments in the same city have such different policies on the same law?

Sincerely,

John Muller

# WHAT TO DO IF...
## ...You are a Victim of a Theft

If items are stolen from you, there is little hope of recovering them unless you have utilized the electric engravers as described in *Services Offered by Public Safety* section and/or have recorded the serial numbers of the items.

- As soon as the theft is discovered, notify the University Police at 974-2628. An officer will take a report from you. Try to supply as much information as possible concerning the stolen property such as serial number, make, model and value.

The majority of thefts on campus occur because property was left unsecured or unattended. It is estimated that over 80 percent of all thefts on campus could be prevented if everyone would lock up valuables.

## ...You are Assaulted

Dial 9-1-1 as soon as you can.

- Try to remember as much about the person as possible. Important characteristics to include: sex, race, hair color and length, body size, clothing description, scars and other noticeable markings, mode of travel, vehicle type, color and tag number.

The campus will be searched immediately for suspects and neighboring police agencies will be notified to assist.

## ...You See Suspicious Persons

If you see anyone acting suspiciously, call the University Police by dialing 9-1-1. Do not approach the person yourself.

- Report the type of suspicious activity and give a general description of the subjects (number of persons, sex, race, dress, vehicle and location). Stay on the line with the Police Dispatcher. Campus police will investigate your report immediately.

If all members of the campus community become security conscious and report suspicious activity, thefts and related incidents will be measurably reduced.

# WHAT TO DO IF...
## ... Receive a Bomb Threat

If you receive a bomb threat, it is important to obtain as much information from the caller as possible. Things to ask include: (1) location of the bomb, (2) time of explosion, and (3) type of bomb.

- Observe the caller's voice and any background noises you may hear. Such information may assist in identifying the caller.
- Call the University Police by dialing 9-1-1 immediately.

Do not panic. Campus police will search the area involved and notify other appropriate agencies if necessary. Campus police and the supervisor of the building together will determine if evacuation is required.

## ...If You Are Sick or Injured

- Call the University Police and advise the nature of the illness or injury and your exact location. A police officer will respond to assist you and will have Tampa Fire Rescue respond if necessary.
- If you are not seriously injured or sick, call Student Health Services

Dec. 15, 2000

Attorney General
Dep't of Legal Affairs
The Capitol Suite PL-01
Tallahassee, FL 32399-1050

Dear Sir:

I plan to sue the Tampa Police Dep't.

In compliance with Florida statutes, I am giving you 6 months notice.




Sincerely,

John Muller

Dec. 22, 2000

Dear Chief Holder:

Enclosed is a letter you may find interesting.

Sincerely,

J. Muller

John Muller
Box 2432
Crystal River, FL 34423

Lt. Guidara
Tampa Police Dep't
411 N. Franklin St.
Tampa, Fl 33602

December 21, 2000

Dear Lt. Guidara:

I have received your report, and I must disagree with your comment that the "facts are brief." Part of your confusion could be due to Mr. Stertzer's decision to treat my complaint as "informal" and not "formal." Why he chose to treat it informally, I do not know. I told him when I was leaving his office that there was a lot more involved, but he didn't seem interested in hearing any more details.

I don't know where you got the idea that a pawnshop is involved. If the people who threatened me work for a pawnshop, it is news to me. I understood that they work for Reyes Automotive. Actually, as Mr. McGowan refused to write any report, I have no idea who all 3 people are – only Guyror Reyes, who called 911.

There were 2 cars parked on the sidewalk on the south side of Hillsborough Ave., completely blocking the sidewalk. I realize that TPD is like many dep'ts in the way they respond to calls. If something does not seem important to dispatch, a caller will wait a long time for an officer to come, if one comes at all. It IS illegal to park on a sidewalk. I realize most people could care less about a car parked on a sidewalk, including passing patrol cars. Maybe there is a rare officer who would stop and have the cars removed, but I believe it would be an exception. I am different. I realize that people in wheelchairs, bicycles, baby carriages, etc. need to have access to sidewalks, and a car parked in a way that completely blocks passage on the sidewalk needs to be moved. It is an important safety issue. This is especially true on that section of East Hillsborough Ave., where big trucks regularly speed at 50 mph and more in the right lane.

I called NON-EMERGENCY dispatch, and asked for an officer to be sent. The woman dispatcher seemed to "blow off" my request. But she said someone would be sent. I waited 20 minutes, but nobody came. Maybe all officers were busy on calls, or maybe she just ignored the call, I don't know.

A woman came by walking west, pushing a baby carriage. Traffic was extremely busy, and she could not get past the cars. She was standing just waiting behind the cars parked on the sidewalk, not able to pass. I approached and photographed her stuck behind the parked cars, s·o    I could show a police supervisor how dangerous this practice is, parking cars on the sidewalk. As I took these photos, 3 people came walking toward me

They wanted me "off their property." I told them that they do not own the sidewalk, and that the cars were blocking the woman's passage. They then threatened me. Rather than argue with them and possibly get into an unfair fight with three people vs. myself, I went back to the pay phone, and now I dialed 911. I had been threatened, and dispatch needed to know that an officer was needed on the scene. I waited another 20 minutes, and Mr. McGowan and Officer Chadwick came on the scene.

I assumed the officers were responding to MY 911 call. Actually, they were responding to Guyror Reyes' 911 call. See the enclosed copy of "Tampa PD Complaint Hardcopy." I told Mr. MCGowan my reason for calling. The cars were by now moved, but the people there admitted they had been blocking the sidewalk. The woman said to Mr. McGowan: "I should have hit this guy when he came on our property." Mr. McGowan asked her where I took the photos, and she said "on the sidewalk." Mr. McGowan said "that is legal." She struck my arm, and I told Mr. McGowan I didn't like her to do that. He said for us to separate, and we did so. Mr. McGowan told the woman that the sidewalk is NOT her property, it is public property.

She and one of the Hispanic males then told Mr. McGowan that I said I was a policeman. Well, at that point I wanted a police report, for 2 reasons:
1) She told him she "should have hit me." I considered this a threat.
2) They were accusing me of a felony. I feel I have a right to not be falsely accused of such a crime, and I plan to sue these people.

Mr. McGowan didn't feel a report was necessary, and I said I'd see a supervisor at Dist. II headquarters. Mr. McGowan did NOT mention anything about "the proper manner in which to request non-emer. Police service" as you say in your report. Fact is, he was there is response to Guyror Reyes, who called 911. Again, see enclosed "Tampa PD Complaint Hardcopy."

I am curious if anyone ever told Guyror Reyes "the proper manner in which to request non-emer. Police service."

I then went to Dist. 2 and asked for Mr. McGowan's supervisor. Mr. Pomponio and Mr. Packer came to the lobby. I asked for copies of both of my calls, the non-emer. Call, and the 911 call. They did not know how to get these copies.

I said I'd like Mr. McGowan to come in, and admit that he heard the woman say she should have hit me. They said he would probably refuse to make any statement. Then Mr. Pomponio said: "I could arrest you for calling 911." I said that any time I feel threatened by someone, I will continue to call 911. I left, and as I was leaving the lot, Mr. Pomponio was waving a document, and asking if I wanted it. I came to him and he gave me the enclosed document, "Tampa PD Complaint Hardcopy." At this point, I assumed this paper was a report made by Mr. McGowan. I did not realize it was a copy of the response to Guyror Reyes' 911 call.

I was again leaving, when Mr. Pomponio said: "Don't you want to stick around and get arrested for your 911 call?" I came back, put my bike against a tree, put my hands behind my back, and said: "Arrest me. It's happened before, but good luck getting a conviction." Mr. Packer looked surprised that Mr. Pomponio wanted to arrest me, and we started to draw a crowd of other officers coming and going into the rear of the building.

They took me inside. I wanted to lock my bike, but they said it would be impounded. I asked to see an attorney, and they showed me the phone. I called my lawyer, who was not in. Her secretary said to call the ABA, and ask for a referral for a criminal attorney, as my attorney is in civil practice.

I mentioned I am in flight school. Mr. Pomponio asked what I fly, and I told him a Cessna 172. He wanted to see my FAA medical card. As I had not yet soloed, there was no need for me to have a medical card. The flight instructor is the PIC (pilot in command), and he/she must have an FAA medical card, but the student does not need one. At this point I started to wonder what was wrong with Mr. Pomponio, for him to want to see an FAA medical card. What this had to do with making improper 911 calls, I could not understand. He did not seem to believe I was a flight student, so I said if it is so important to him, why not call my instructors, and ask them to verify it. When he actually did so, I thought he was really acting strange. He called Leading Edge Aviation, and my instructor was not available. He asked the receptionist how many hours I had, and said he was with TPD. Of course the receptionist had no idea how many hours of flight time I had, and told him that. He then called Hawthorne Aviation in Lakeland, and my instructor there was not available either. He again asked the receptionist my number of hours, and she of course did not know either. Why does your report not address this issue at all? I told Mr. Stertzer about this, and he agreed it was an odd thing for Mr. Pomponio to do. Maybe he left these facts out of his report, or maybe you just ignored them, I don't know. It sure seems to be an abuse of authority to me.

Mr. Packer said maybe he should "Baker Act" me. I told him that he seemed to be really reaching for anything to get me locked up, and I told him maybe since he knew he couldn't make a good arrest on the 911 charge, he was resorting to having me put away for being "crazy." Again, your report mentions nothing of this threat by Mr. Packer. I did tell Mr. Stertzer this, and maybe he neglected to put it in his report, or maybe you just ignored this part of his report.

Please send me a copy of the written statements of Mr. Pomponio, Mr. Packer, Mr. McGowan, and Mr. Stertzer.

You said you "would proffer that Mr. Muller's mental state is suspect. This is easily supported by the fact that Mr. Muller repeatedly makes reference to a police report…when…there was no report written." First, if you look at the enclosed "complaint hardcopy", you will understand why I thought a report had been made. I assumed this had been made by Mr. McGowan, until Mr. Stertzer explained it was a written copy of the dispatcher's actions in response to the 911 call made by Guyror Reyes. If a misunderstanding like this means a suspect mental state, I think you are

confused. The only time I refer to a police report is in my letter the Mr. McGowan, so to say I "repeatedly" refer to a police report is really not accurate.

I must assume nobody gave you a copy of my letter of Oct. 20, 2000 to Maj. Davis, which I also sent to Chief Holder. Enclosed is a copy.

I think you'll agree that the facts are not brief at all.

Sincerely,


J. Muller

```
'age: 1                        TAMPA PD
'or: P37223                COMPLAINT HARDCOPY            CP 2000 - 696041

on, Oct. 16 2000                              Reported: Oct-16-2000 12:13:00
```

## Incident Location
    Address : 3221 E HILLSBOROUGH AVE
    District : 2    Beat : E5    Grid : 74
    Telephone no. : 231-2000

## General Information

    Case type : DISTURBANCE    Priority : 3
    TIME - Disp : 12:24:00 Clrd : 12:24:00
    How call received : Unknown

    Call taker ID : P34509

## Complainant Information

    Name : GUYROR REYES
    Address : 3221 HILLSBOROUGH AV E
    Home Telephone : 813 231-2000
    Remarks :
        P34509        C2C3           911/BUS
        GMC AUTO REPAIR   WM ON A BIKE SAID HE WAS ACOP ANDIS HARRASING COMPL
        OVER A VEH IN THE PKING LOT

## Conclusion Information

    Report expected : NO


## Dispatch Details










                    ** END OF HARDCOPY REPORT **

Jan 31, 2001

Cpt. Price:

While back in Tampa for a week, I got your message. Thank you for calling.

Please contact me in writing, as I prefer all contact to be of a written nature.

Enclosed are articles describing 3 of 5 accident stories of pedestrians hit crossing streets in the one week I have been in Tampa. Mr. Packer advised me that, when I saw the cars blocking the sidewalk in front of Reyes Automotive, I should have simply crossed the street and not gotten involved reporting the illegally parked cars.

Well, his advice was very bad. I am mature enough to recognize it as the bad advice it was; however, I feel bad for some other person who might take his advice and become another dead pedestrian. It seems very odd that a supervisor in a police dep't in as large a city as Tampa would give such advise to a bike rider.

I've enclosed a copy of the three accident stories.

Sincerely,


J. Muller
18231 Little Prairie Road
Prairieville, LA 70769

## HILLSBOROUGH
### Woman hit crossing road after crash

TAMPA – A woman involved in a minor car accident was struck by a car Monday as she crossed Memorial Highway after calling police, according to an accident report.

Elizabeth Ann Parsons, 20, of Tampa was in critical condition at St. Joseph's Hospital, police said.

### Pedestrian struck, killed on Hillsborough

TAMPA – A woman was struck by a car and killed Friday afternoon as she attempted to cross Hillsborough Avenue.

The woman's identity is unknown. The driver, Robert Clarke Snyder II, 52, of Tampa, was heading east on Hillsborough Avenue. His car hit the victim at 6:50 p.m., just east of the Tudor Drive intersection, police said.

The woman was pronounced dead 41 minutes later at St. Joseph's Hospital. She was between 35 and 45 years old.

## POLK
### Man killed while walking on S.R. 60

LAKE WALES – A pedestrian was struck and killed Sunday night while walking on State Road 60 about seven miles west of Lake Wales.

The name of the 43-year-old man, who had a rural Bartow address, was not released, according to a Florida Highway Patrol report.

The man was walking west in the middle of the outside lane when he was struck about 8:20 p.m. by a westbound car driven by Nicolas Vazquez, 24, of 126 11th St. W. in Wahneta, officials said. Vazquez and a passenger were not injured. No charges were filed.